**GENERAL OFFICE PRODUCTS
CORP., Plaintiff,**

v.

**A.M. CAPEN'S SONS, INC., Defendant.**

**Civ. No. 83–2407 GG.**

United States District Court,
D. Puerto Rico.

April 25, 1985.

Philip E. Roberts, San Juan, P.R., for plaintiff.

Ana Matilde Nin, San Juan, P.R., for Gussco Mfg. Inc.

Mario Arroyo Davila, San Juan, P.R., for A.M. Capens Sons, Inc.

## OPINION AND ORDER

GIERBOLINI, District Judge.

This is an action brought by plaintiff, General Office Products Corp. (General) against defendant, A.M. Capen's Sons, Inc. (Capen's) to recover damages allegedly resulting from defendant's tortious interference with the contractual relationship which previously existed between General and Gussco Manufacturing, Inc. (Gussco) under the Dealer's Act of Puerto Rico, (Law 75, 10 L.P.R.A. 278, et seq.). Jurisdiction is invoked under 28 U.S.C. § 1332.

Defendant initially filed a motion for summary judgment and/or dismissal on February 6, 1984, arguing that Article 1802

of the Puerto Rico Civil Code, 31 L.P.R.A. 5141 did not recognize a cause of action for the tortious interference with a contract. Upon defendant's request, the question of whether or not a cause of action existed under the facts of this case was, thereafter, certified to the Supreme Court of Puerto Rico. The Supreme Court rendered its opinion answering in the affirmative.[1] A certified translation is included as part of the record in this case.

On August 23, 1984, defendant filed another motion for summary judgment arguing (1) that plaintiff lacks a cause of action; (2) that for the court to recognize a cause of action in this case would be the equivalent to permitting violations of the existing anti-trust laws and of sanctioning defendant's recognized constitutional rights; and (3) that plaintiff is not entitled to any relief because it has not proven its damages enough to satisfy the jurisdictional amount required for diversity.

Since this motion contains a jurisdictional issue which is improperly brought under Rule 56 of the Federal Rules of Civil Procedure, we will consider the same also as a motion to dismiss under Rule 12(b). Accordingly, we proceed with the jurisdictional question first.

AMOUNT IN CONTROVERSY

Under Title 28, § 1332 of the United States Code, mere diversity of citizenship does not confer jurisdiction in the absence of the required amount in controversy. Accordingly, when it is established to a legal certainty that damages will not exceed the requisite $10,000, a court must dismiss the case since it lacks the power to otherwise hear the same. *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288–89, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938).

■ Ordinarily, an averment in the plaintiff's complaint that damages exceed the jurisdictional amount—if made in good faith—is sufficient for purposes of diversity jurisdiction. But when such an amount is controverted, the burden is on the plaintiff or the one seeking to invoke diversity to establish that its claim for damages is not for less than the jurisdictional amount. *St. Paul, supra; McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Núñez v. Confederation Life Ins. Co.*, 372 F.Supp. 497 (D.C.P.R.1973); *Reyes v. Eastern Airlines, Inc.*, 528 F.Supp. 765, 767 (D.C.P.R. 1981); *Salgado v. Piedmont*, 534 F.Supp. 938 (D.C.P.R.1981); *see also*, Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction*, § 3702 (1976).

In *Duchesne v. American Airlines, Inc.*, 758 F.2d 27 (1st Cir.1985), the court considered the question of whether the district court had erred by dismissing a claim after finding that plaintiff had not established that the actual amount in controversy exceeded $10,000. The court held that while it was unlikely plaintiff would recover more than the jurisdictional amount, it was not legally certain she would recover less. The court reasoned that it was difficult to be "legally certain" the jurisdictional

---

1. In *General Office Products Corp. v. A.M. Capen's Sons, Inc.*, No. 0–84–278 (on certification to the Supreme Court of Puerto Rico, June 29, 1984), the court held that Article 1802 recognizes the cause of action in question and that such a cause of action could be applied to exclusive distributorships. The court pointed out the elements of the action as follows:

   In the first place, there must be a contract with which a third person interferes. If what is affected is an exception or a profitable financial relationship where there is no contract, the action does not lie, although it is possible that liability be incurred under other judicial principles.

   In the second place, *fault must be present*. We adopt the opinion of the majority according to which the prejudiced party need only show or present facts allowing the court to infer that the third person had acted tortiously, with knowledge of the contract's existence.

   The third element is that there must be a damage to the plaintiff. The fourth element is that said damage must be a consequence of the tortious acts of the third person. The necessary causal nexus is that between the act of the third person and its effect on the prejudiced party. That the prejudiced party's co-contractor has had the intention to breach the contract, is irrelevant to this end. It suffices that the third person has provoked or contributed to the breach. In case of concurrent faults, the liability is solidary. (Emphasis added)

amount would not be met in tort cases involving a substantial claim for pain and suffering. *Id.* at 28.

In the case at hand, defendant argues that any damages, to which plaintiff might be entitled to, will not exceed the jurisdictional amount of $10,000 which is required for diversity. It claims that plaintiff has not met its burden of proving that its damages exceed $10,000 since the $100,000 amount propounded by plaintiff is conclusionary at best. We disagree.

▪ Defendant admits in its motion that from 1979 to 1983 it sold over $68,000 in Gussco products in Puerto Rico with a gross profit of $12,899.12. If plaintiff prevails in its suit, it can conceivably obtain the loss profits as a measure of damages. Furthermore, Article 1802 (31 L.P.R.A. 5141) does not limit damages to profits alone. In light of the above, it cannot be stated with legal certainty that plaintiff's damages will be less than the jurisdictional amount. Thus, we find that we have jurisdiction to entertain this action.

## MATERIAL FACTS

A summary judgment under Rule 56 of the Federal Rules of Civil Procedure is appropriate "if pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on such a motion, the court must look at the record in the light most favorable to the party opposing the motion. *Stepanischen v. Merchants Despatch Transportation Corporation,* 722 F.2d 922 (1st Cir.1983); *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976).

▪ Rule 56 also provides that if a motion for summary judgment is properly supported, the non-moving party may not rest upon mere allegations. Instead, it must set forth specific facts showing that a genuine and material issue exists in order to defeat such a motion. *Nicholas Acoustics & Specialty Co. v. H. & M. Construction Co.,* 695 F.2d 839, 844 (5th Cir.1983). According to *Hahn, supra,* at 464.

A material issue is one which affects the outcome of the litigation. To be considered "genuine" for Rule 56 purposes, a material issue must be established by *"sufficient evidence supporting the claimed factual dispute ... to require a jury or judge to resolve the parties' differing versions of the truth at trial."* First National Bank of Arizona v. Cities Service Co., Inc., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968). *The evidence manifesting the dispute must be "substantial",* Firemen's Mut. Ins. Co. v. Aponaug Mfg. Co., Inc., 149 F.2d 359, 362 (5th Cir. 1945), going beyond the allegations of the complaint. *Beal v. Lindsay,* 468 F.2d 287, 291 (2d Cir.1972). (Emphasis added)

Mindful of the aforementioned standard, we find the following facts to be clear and undisputed:

1) Defendant, Capen's, is a corporation with its principal place of business in New Jersey.

2) Capen's has been buying and selling products manufactured by Gussco in the continental United States for approximately fifteen years, and has been selling these products to clients in Puerto Rico since the early 1960's.

3) In 1978, Garriga Trading Co., Inc. (Garriga) reached an agreement with Gussco and became an exclusive distributor of Gussco products in Puerto Rico.

4) In 1979, General, the plaintiff corporation, was formed and subsequently assumed the distributorship rights of Garriga.

5) The preexisting relationship between Capen's and Gussco continued notwithstanding the fact that General and Gussco had formed an exclusive arrangement.

6) In 1981, plaintiff complained to Gussco about defendant's sales in Puerto Rico. Gussco, in turn, agreed to discontinue mak-

ing any shipments to Puerto Rico but refused, however, to impose any territorial restrictions on defendant's sales.[2]

7) In 1983 plaintiff ceased its relationship with Gussco and filed a complaint in this court under the Puerto Rico Dealer's Act. On September 30, 1984, plaintiff filed a suit against Capen's under Article 1802, Title 31, § 5141 of the Laws of Puerto Rico.

*Discussion*

■ According to the Supreme Court of Puerto Rico, the question of whether or not Capen's interfered with the contractual relationship that existed between General and Gussco turns on whether or not Capen's acted with effective knowledge of the contract. Thus, the issues of "effective knowledge" and fault, ("culpa") are essential elements that must be proven in order to prevail under the cause of action at hand. *See General Office Products Corp., supra.*

■ Since the concept of fault is crucial in this case, its contours must be clarified and understood before a determination of its existence can be attempted. At the outset we note that, according to civil doctrine, "culpa" (fault) and negligence are not synonymous nor can fault be equated to negligence. *Jiménez v. Pelegrina Espinet,* 112 D.P.R. 700 (1982); *Compañia Transatlántica Española, S.A. v. Meléndez Torres,* 358 F.2d 209 (1st Cir.1966). Fault encompasses more and the evidence to prove it needs to be stronger and different from that of negligence. Indeed, fault is more akin to dolus. According to Puig Brutau:

In contractual liability art. 1.101 C.c. distinguishes from dolus and negligence

and, in the case of extracontractual liability, art. 1.902 C.c. [Art. 1802 Civil Code of Puerto Rico] makes a distinction between fault and negligence. It is really a simple lack of precision in the terminology, since in the second case the word "fault", as a concept different from negligence, is to be considered in the sense of dolus, which is the conduct observed with awareness or foresight of the injurious result.[3]

Dolus means malice, bad intention, in addition to mere voluntariness. Jaime Santos Briz, *Derechos de Daños,* page 45, citing the opinion of the Supreme Court of Spain of December 19, 1961.[4]

Civil dolus also comprises the knowledge of the ensuing result, together with indifference regarding said result. It is the awareness of the forthcomingness of a result which will harm the interests of another in a manner not permitted by law, in spite of which the agent, uninterested in causing harm, prefers to cause it in order to obtain some other thing he wishes to obtain. He prefers to carry out his objective even at the expense of harming, consciously, the interests of another person.[5] In the case at bar, there was no contractual relationship between Capen's and plaintiff so the doctrine of extracontractual liability as explained by Puig Brutau, *supra,* is applicable.

■ Considering the facts of this case in light of the above standard, we are compelled to find that fault ("culpa") has not been established. Fault cannot be established without knowledge and, as a preface, we note that the fact that General's contract with Gussco was oral and that Capen's had sold Gussco products in Puerto

---

**2.** Under the facts of this case, we decline to interpret Law 75 as prohibiting a person from buying merchandise in the United States and thereafter reselling it in Puerto Rico where someone else has an exclusive distributorship for that type of merchandise. Such a restriction may be impermissible as repugnant to the Commerce Clause.

**3.** José Puig Brutau, *Fundamentos de Derecho Civil,* Tome II, Volume III, at 86. *See also* Manresa, *Comentarios al Código Civil Español,*

Tome VIII, Volume I, at 171 et seq. (6th Ed. 1967).

**4.** José Puig Brutau, *supra,* at 88.

**5.** *Id.* at 86. *See also* Puig Peña, *Culpa Civil,* Nueva Enciclopedia Jurídica, Tome VI, 1956, pp. 102 et seq.; Ruggiero, *Instituciones de Derecho Civil,* Spanish translation of the 4th Italian Edition by R. Serrano Súñer y Santa Cruz Tejeiro, Tome II, Volume I.

Rico long before the plaintiff corporation was even established, makes us conclude that Capen's did not have effective knowledge of the contract.

This conclusion is buttressed by the fact that Gussco refused to impose territorial restrictions on Capen's. Had such restrictions been imposed, Capen's would arguably have had reason to make further inquiries—inquiries which might have lead to the discovery of the contract between the principals. However, this was not the case here.

We further note that Capen's was unaware of Gussco's agreement with General not to ship any of Capen's orders that were destined to Puerto Rico—Capen's had no reason to know of this agreement since its normal practice was to receive its orders from Gussco in the continental United States and subsequently, ship them personally to its customers in Puerto Rico. If Capen's had known of this agreement, this too might have given Capen's inquiry notice. But such was not the case here either.

General argues, in its opposition to the motion for summary judgment, that Capen's was informed of the contract and of General's complaints by Gussco. However, we find the record lacks substantial evidence to support this allegation. In his affidavit, Julio Garriga, President of General, states that Gussco had informed Capen's, but the only basis for his conclusion appears to be an alleged but unsubstantiated promise by Gussco to speak to Capen's. In his deposition, Stanley Melvin Thomashow, Vice President of Sales and Marketing of Gussco, states under oath that he did not inform Capen's of the contract—although he "believes" someone from Gussco "might have" mentioned it in passing. We cannot find in the record any other evidence proving that Gussco, or anyone else informed Capen's.[6] Thus, we find that General's bare allegation, viewed in the light most favorable to plaintiff, is still not substantial enough to put this fact in genuine dispute and, accordingly, cannot be used to defeat defendant's motion for summary judgment. *Hahn, supra.*

Aside from this, we find, in accordance with the record that, while General knew Capen's sold Gussco products in Puerto Rico, it neither informed Capen's of its oral contract with Gussco nor warned Capen's of any legal ramifications.

Principles of fair play require an owner of an exclusive distributorship, upon discovering that a third party is interfering with its contractual interests, to provide said party clear and sufficient information of the relationship between the principals and of the possible consequences of any further hindrance under Law 75. If this is not done the distributor cannot then claim, barring other circumstances, that said party tortiously and with fault interfered with its contractual relationship.

Wherefore, it appearing that there are no material facts in genuine issue, defendant's motion for summary judgment is hereby granted.

Judgment shall be entered accordingly.

SO ORDERED.

---

6. Our search for certain interrogatories referred to by General in its opposition has been extensive, but to no avail. They have not been included as part of the record in this case.