## EL GRAN VIDEO CLUB CORP., Plaintiff,

v.

## E.T.D., INC., et al., Defendants.

### Civ. No. 90–2084 (JAF).

United States District Court, D. Puerto Rico.

Feb. 26, 1991.

---

**152**

Samuel A. Silva–Rosas, Hernandez & Vidal, San Juan, Puerto Rico, for plaintiff.

Rossell Barrios–Amy, McConnell, Valdes, Kelley, Sifre, Griggs & Ruiz–Suria, San Juan, Puerto Rico, for defendants.

## REMAND ORDER

FUSTE, District Judge.

The issue we face today is whether diversity of citizenship exists in this matter which came before us on a removal petition from the Superior Court of Puerto Rico. The plaintiff seeks to have this matter remanded to the Puerto Rico court. Plaintiff, a Puerto Rico resident, claims that one of the defendants, J.J. Juarbe, is also a

Puerto Rico resident, divesting this court of subject matter jurisdiction. Defendant E.T.D. Inc., (ETD), a Texas corporation, defends the removal claiming that Juarbe was fraudulently added to the suit merely to defeat diversity jurisdiction, and that no relief may be properly sought against Juarbe.

### I.

*Procedural History*

Plaintiff commenced the instant action in the Superior Court of Puerto Rico, San Juan Part, on June 14, 1990. Plaintiff is a Puerto Rico corporation engaged in the sale and rental of video films in the Puerto Rico market. The complaint alleges that in July of 1989, ETD, a Texas-based distributor of films, entered into an exclusive dealership arrangement with plaintiff in which plaintiff would be ETD's exclusive representative in Puerto Rico for sales and rentals of films dubbed into Spanish and/or with Spanish subtitles. In November of 1989, according to the complaint, ETD unilaterally terminated its exclusive dealership agreement with plaintiff, and instead began distribution through Juarbe.[1] The complaint alleges that Juarbe's actions were intentional, and it may easily be inferred from the complaint that Juarbe was aware of the contract between plaintiff and ETD. Plaintiff alleges $231,000 in damages against all defendants, jointly and severally. Plaintiff also prays for an injunction against the distribution of films in any manner inconsistent with the exclusive dealership contract between El Gran Video and ETD.

ETD removed the case to this court under 28 U.S.C. § 1441, alleging that diversity of citizenship existed in the action. ETD concedes that Juarbe, if left in the action as a defendant, would defeat diversity jurisdiction. That conceded, however, ETD argues that Juarbe was fraudulently joined in

---

**1.** Juarbe is sued as a natural person. There is also an allegation against an "ETD Puerto Rico Division" and a "J.J. Distributors." Both of these designations are supposedly the organizational names of the operation run by Juarbe.

We need not decide whether these parties are entities amenable to suit, since Juarbe's presence before the court, on its own, is sufficient to compel today's result.

the action precisely to defeat jurisdiction. ETD argues that since no possible claim for relief was properly stated against Juarbe, Juarbe has to be ignored for purposes of diversity jurisdiction. 14A C. Wright, A. Miller, *Federal Practice and Procedure* § 3723 (1985); *Poultry & Beef of Puerto Rico Inc., v. Smithfield Packing Co.*, 635 F.Supp. 1070 (D.P.R.1986).

Plaintiff moved for an order remanding the matter to the Superior Court on the basis on lack of diversity, which we granted by marginal order on October 18, 1990. ETD moved for reconsideration of the remand order. We vacated the remand order by marginal order on November 18, 1990. The plaintiff then filed a motion for reconsideration of the vacating of the remand order. It is this last motion that is before us now, and an extended discussion is in order.

## II.

### *Discussion*

A defendant or defendants in a state court suit may remove the case to federal court so long as the federal district court has original jurisdiction over the matter (either through diversity or federal question), and, in diversity actions, none of the defendants properly joined and served is a resident of the state in which the action was brought. 28 U.S.C. § 1441. *Charles B. Bonanno Linen Service, Inc. v. McCarthy*, 708 F.2d 1 (1st Cir.), *cert. denied*, 464 U.S. 936, 104 S.Ct. 346, 78 L.Ed.2d 312 (1983). We must determine whether Juarbe is a proper party. Since no one argues that a federal question has been stated here, this federal court, if it is to have jurisdiction over the matter, must have it on the basis of the diversity of the parties. If we find that Juarbe and the plaintiff are co-residents of Puerto Rico and that the plaintiff has a good faith basis for seeking relief against Juarbe, the matter must be remanded. In addition, 28 U.S.C. § 1441(b) disallows removal in diversity cases where any of the proper parties are citizens of the state in which the action is brought, providing a second reason why

the matter cannot be removed if Juarbe is a party properly before the court.

### A. The Causes of Action

Defendants argue that the cause of action stated, if any, is under Puerto Rico's Dealer's Act, Law 75, 10 L.P.R.A. §§ 278–278d ("Law 75"). Law 75 protects Puerto Rico-based dealers from having their dealership contracts canceled by the principal supplier:

Section 278a. Termination of relationship

Notwithstanding the existence in a dealer's contract of a clause reserving to the parties the unilateral right to terminate the existing relationship, no principal or grantor may directly or indirectly perform any act detrimental to the established relationship or refuse to renew said contract on its normal expiration, except for just cause.

The statute provides for damages (10 L.P.R.A. § 278b) and grants the court the power to enjoin the parties "during the time the litigation is pending" from failing to continue the terms of the contract (10 L.P.R.A. § 278b–1). Defendant argues that the statute runs against the "principal or grantor" only, and not against the new dealer who might be installed following a breach of the dealership contract by the principal. In this case, ETD argues that it (ETD) is the only potentially correct defendant, since no Law 75 claim can run against Juarbe.

Defendant draws support from *Poultry & Beef of Puerto Rico v. Smithfield Packing Co.*, 635 F.Supp. 1070 (D.P.R.1986). In *Poultry*, this court faced almost the same situation that we have here. The case was brought in Puerto Rico Superior Court by the Puerto Rico dealer who claimed that a Virginia corporation had canceled its contract and entered into a new arrangement with a different Puerto Rico dealer. The court found that since only damages were being sought under the Law 75 claim, the only proper party was the principal (the Virginia corporation). *Id.*, at 1071. Law 75 only allows damages to be recovered against the principal. In our case, however, the plaintiff seeks an injunction as

well. Since Law 75 provides for at least a temporary injunction while the action is pending, it is conceivable that for full relief to be granted an injunction might have to issue against both the principal and the new Puerto Rico dealer. If the new dealer, for instance, had already received substantial stock by the time the suit was initiated, the court might be within its power to enjoin the distribution of those goods under 10 L.P.R.A. § 278b–1. In that sense, "relief" (albeit temporary, since Law 75 does not seem to authorize a permanent injunction), might be properly sought against the new dealer. Therefore, it is not clear that *Poultry*'s holding on the Law 75 claim is dispositive where injunctive relief is sought. The *Poultry* court itself acknowledged the distinction between a pure damages Law 75 case and an injunctive relief case. The court specifically supported its holding on the basis that no injunctive relief was sought. *Poultry*, 635 F.Supp. at 1071; *Romero v. ITE Imperial Corp.*, 332 F.Supp. 523 (D.P.R.1971). The answer to the question of whether injunctive relief could run against one who is not a principal would lie in what appears to be relatively unsettled Puerto Rico law on the breadth of the Law 75 injunctive and damage relief.

■ However, we can avoid venturing into this murky area of local law, since Law 75 is not the only cause of action stated. We see that the pleadings, liberally read as they must be at this stage, state a cause of action for tortious interference with contract. Such a tort has been explicitly recognized by the Supreme Court of Puerto Rico in *General Office Products v. A.M. Capen's Sons*, 115 D.P.R. 553 (1984), Official Translation at 727. *See General Office Products v. A.M. Capen's Sons, Inc.*, 607 F.Supp. 1191 (D.P.R.1985) (federal court case which certified issue of whether Puerto Rico recognized tortious contractual

interference to the Puerto Rico Supreme Court which resulted in the recognition of the tort as set out here); *rev'd on other grounds*, 780 F.2d 1077 (1st Cir.1986). *See also General Office Products Corp v. Gussco Mfg. Inc.*, 666 F.Supp. 328 (D.P.R.1987) (Law 75 case against principal for same breach).

The tort arises under the general tort statute in the Puerto Rico Civil Code, Article 1802; 31 L.P.R.A. § 5141. The elements are the following: 1) there must be a contract in which a third party interferes; 2) there must be "fault" on the part of the third party, in that the factfinder must be able to infer that the third party knew of the existence of the contract and acted intentionally;[2] 3) the plaintiff must show actual injury resulting from the action of the third party. A causal nexus must exist. It is sufficient to prove this element of the tort that the acts of the third party contributed to or provoked the breach. It is not a defense to show that the principal had intended on its own not to honor the contract.

The elements are all pleaded in the case before us. Plaintiff alleges that a contract of exclusive dealings existed between itself and ETD. Plaintiff alleges that Juarbe intentionally, with knowledge of the contract, contributed to ETD's refusal to honor the contract. Plaintiff alleges serious economic harm to it as a result of the interference in its contractual relations. We are convinced that a cause of action for intentional interference with contractual relations is properly alleged by plaintiff against Juarbe. We do note that plaintiff does not properly label its two causes of action, either the Article 1802 or the Law 75 claim. Since we can so clearly ascertain the applicable provisions of Puerto Rico law, however, we do not see this failure as

---

**2.** Since the interpretation by the federal court of Puerto Rico's tort of interference with contract may surface again, we feel compelled to clear up an error in the official translation that is bound to lead to confusion to any who look there. In Spanish, the Supreme Court of Puerto Rico required as the second element of the tort that the third party act "intencionalmente, con conocimiento de la existencia del contrato," 115

D.P.R. at 559, that is, intentionally with knowledge of the contract. (Translation ours). The official translation states that the third party must act "tortiously, with knowledge of the contract's existence." Since "tortiously" can include negligent or intentional conduct, the use of that word in this context renders the phrase meaningless.

fatal. Modern notice pleading seeks to emphasize substance over technical nicety. We have before us a properly pleaded cause of action by a citizen of Puerto Rico against a citizen of Puerto Rico. No federal issue is stated. 28 U.S.C. § 1331. The matter is not within our grant of original jurisdiction under diversity. 28 U.S.C. § 1332.

■ There is left to defendant one potential argument in favor of removal which we set up only to strike down. The argument derives from the literal wording of the removal statute itself. In 28 U.S.C. § 1441(c), it states that:

> Whenever a separate and independent claim or cause or action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes or action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction.

Assuming that the Law 75 claim is one cause of action which would have been removable if sued upon alone (since diversity exists between the plaintiff and ETD) and the tortious interference claim is another cause of action, one might conclude that the Law 75 Claim could be properly removed, and the tortious interference claim could tag along. The court would thereby hear a claim which it would have no power to hear were it filed in the federal court in the first instance.

This absurd (and probably unconstitutional)[3] result was reached in a 1950 Fifth Circuit case with a structure similar to the case currently before us. *American Fire & Casualty Co. v. Finn,* 181 F.2d 845 (5th Cir.1950), *rev'd, American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951). In *American,* a Texas resident who suffered property loss in a fire sued an Indiana corporation, a Florida corporation, and a Texas individual on non-federal question claims (insurance) in a Texas state court. The defendants removed the entire case to federal court. The Court of Appeals upheld the removal under section 1441(c). The court reasoned that since the claims against the corporations would have been removable if sued on alone, and that the "claims" against each defendant were "separate and independent," the language in section 1441(c) allowed for removal of the entire matter, rendering the "removal jurisdiction of the federal court [ ] broader than its original jurisdiction ..." *American,* 181 F.2d at 846.

The Supreme Court reversed. *American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951). The Supreme Court grounded its reversal on the interpretation given to the words "separate and independent" by the circuit. The Fifth Circuit interpreted section 1441 to have a meaning similar to its precursor, 28 U.S.C. § 71 (1946), which stated that:

> And when in any suit mentioned in this section there shall be a controversy which is wholly between citizens of different States, and which can be fully

---

**3.** For a discussion of the vagaries of section 1441, and its potentially surprising results, see, *Charles D. Bonanno Linen Service, Inc. v. McCarthy,* 708 F.2d 1 (1st Cir.1983). In *Bonanno,* the First Circuit struggled with the statute in the context of a non-diverse state law claim pleaded along with a federal question. The state claim was not "close" enough to the federal claim to be addressed by the court under "pendant party" jurisdiction, and yet was not "distant" enough to be "separate and independent" for purposes of the removal statute. The circuit was forced to conclude that between pendant claims and totally separable claims there existed a kind of judicial limbo for state claims which would find themselves left behind. The First

Circuit gave no indication of what it would do if faced with a proper 1441(c) case which did satisfy the "separate and independent" claim test but was not supportable under pendant jurisdiction grounds. Such a case might result in state law claims with neither diversity nor pendant jurisdiction to support them, resting only on the bare language of 1441(c) itself. It would be difficult to conceive of the Article III justification for the hearing of such a matter before the federal court, since it could not rely, like pendant jurisdiction, on the theory of being a "necessary and proper" outgrowth of the jurisdiction which does explicitly lie in Article III. 14A C. Wright and A. Miller, *Federal Practice and Procedure* § 3724 (1985).

determined as between them, then either one or more of the defendants actually interested in such controversy may remove said suit into the district court of the United States for the proper district.

That section had been read to mean that any controversy which could be resolved wholly between citizens of different states could be "separable", therefore removable. *Barney v. Latham*, 103 U.S. 205, 26 L.Ed. 514 (1881); *American*, 341 U.S. at 9, 71 S.Ct. at 538. In other words, so long as a controversy could be isolated which did not have necessary parties who were non-diverse, the matter could be removed to federal court. The Fifth Circuit found the two claims against the corporate insurance companies to be "separable", and held that "separate and independent" did not impose a substantially different standard than would have applied under section 71. Since the new section 1441(c) also allowed the non-removable claims to be tacked on to the removable ones, within the discretion of the court, the circuit asserted that the entire case was properly removed.

The Supreme Court sharply disagreed. The Court determined that section 1441(c) was intended to abridge the right of removal. The Court found that under section 71, a separable controversy giving rise to removal was "any possible separate suit that a litigant might properly bring in a federal court so long as it was wholly between citizens of different states." 341 U.S. at 11, 71 S.Ct. at 538. The Court held that "separate and independent" as used in section 1441 has a different and more restrictive meaning. In the words of the Court:

> [w]here there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under section 1441(c).

*American*, 341 U.S. at 14, 71 S.Ct. at 540.

In the matter before us, there can be no "separate and independent" claims. ETD's alleged violation of Law 75 and Juarbe's alleged tortious interference visited the same wrong or harm upon the plaintiff. Both causes of action arise out of the cancellation of the same contract. Section 1441(c) affords the defendant no instrument with which to avoid a remand. *New England Concrete Pipe Corp. v. D/C Systems of New England*, 658 F.2d 867 (1st Cir.1981) (many theories of recovery for one contractual breach do not constitute separate and independent claims).

## B. Counterclaims

A note about defendant's counterclaims is appropriate here. Defendant counterclaims in the instant matter claiming that plaintiff El Gran Video has an outstanding debt for merchandise purchased and received from ETD in the amount of $173,-957.85. The same claim was made by ETD in a separate diversity action filed by ETD in the Puerto Rico federal district court. The matter is currently pending before the Hon. Carmen Cerezo under Civil No. 90–2050(CC), since Judge Cerezo denied a motion by defendants to consolidate that matter with the one pending before us. (*See* Order of Judge Cerezo dated October 22, 1990, Civil No. 90–2050). We, therefore, need not concern ourselves with the effect of our remand on the counterclaims asserted here, since ETD's choice of a federal forum to pursue those claims appears to be intact.

## III.

### Conclusion

The motion by plaintiff to reconsider our decision not to remand this matter is GRANTED. This matter is REMANDED to the Superior Court of Puerto Rico, San Juan Part, Civil No. KAC90–961 (903), for further proceedings. This case is now closed before this court for all purposes.

IT IS SO ORDERED.