March 10, 1993 UNITED STATES COURT OF APPEALS

FOR THE FIRST CIRCUIT

No. 92-1949

AMERICAN POLICYHOLDERS INSURANCE COMPANY,
Plaintiff, Appellant,

v.

NYACOL PRODUCTS, INC., ET AL.,
Defendants, Appellees.

ERRATA SHEET

The opinion of the Court issued on February 24, 1993, is
corrected as follows:

On page 16, line 25 insert semicolon after "579"

On page 18, line 15 change "support" to "supports"

February 24, 1993 UNITED STATES COURT OF APPEALS
For The First Circuit

No. 92-1949

AMERICAN POLICYHOLDERS INSURANCE COMPANY,
Plaintiff, Appellant,

v.

NYACOL PRODUCTS, INC., ET AL.,
Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Selya, Circuit Judge,

Coffin, Senior Circuit Judge,

and Stahl, Circuit Judge.

Jennifer S.D. Roberts, with whom Rackemann, Sawyer &

Brewster, P.C. was on brief, for appellant.

Catherine M. Flanagan, Attorney, Department of Justice,

Environment & Natural Resources Division, with whom Vicki A.

O'Meara, Acting Assistant Attorney General, and David C. Shilton,

Attorney, Environment & Natural Resources Division, were on
brief, for Julie Belaga, Regional Administrator, U.S.
Environmental Protection Agency, appellee.

February 24, 1993

SELYA, Circuit Judge. This appeal, which arises out of
SELYA, Circuit Judge.

an insurance company's efforts to secure a binding declaration of

its rights and responsibilities under an insurance contract,

poses an intriguing question: does the "officer removal"

statute, 28 U.S.C. 1442(a)(1), permit a federal official, sued

only in her representative capacity, to remove an action to

federal district court? Because we think that the statute does

not confer such a right, and because there is no other cognizable

basis for federal jurisdiction, we return the case to the

district court with instructions that it be remitted to a state

forum.

I

From 1917 until 1977, a succession of dye-houses

occupied a thirty-five acre plot in Ashland, Massachusetts.

During these six decades, toxic wastes impregnated the site.

Eventually, the United States Environmental Protection Agency

(EPA) and the Massachusetts Department of Environmental

Protection (DEP) discovered the pollution and documented its

source in the dye manufacturing processes. In early 1982, EPA

notified Nyacol Products, Inc. (Nyacol), a producer of colloidal

silicas at a portion of the site, that it considered Nyacol a

potentially responsible party (PRP) under the Comprehensive

Environmental Response, Compensation, and Liability Act (CERCLA),

42 U.S.C. 9601-9626, 9651-9662, 9671-9675.1

1EPA also branded two of Nyacol's officers, Robert Lurie and
Thomas L. O'Connor, as PRPs. Lurie and O'Connor are named as
defendants in the instant suit. For ease in reference, we refer

3

Pursuant to Massachusetts law, which deems PRP notices

equivalent to law suits for the purpose of triggering an

insurer's duty to defend, see Hazen Paper Co. v. United States

Fid. & Guar. Co., 555 N.E.2d 576, 581 (Mass. 1990), Nyacol called

upon its insurance carrier, plaintiff-appellant American

Policyholders Insurance Company (American), to defend it against

EPA's claims and to indemnify it for loss, costs, damages, or

other expense related thereto. American provisionally undertook

the company's defense under its general liability policy. In

December of 1991, American brought suit in a Massachusetts state

court seeking a declaration that it had no obligation to defend

or recompense its insureds. In addition to naming the insureds

as parties defendant, American joined two other defendants:

Julie Belaga, in her capacity as EPA'S Regional Administrator,

and Daniel S. Greenbaum, in his capacity as Commissioner of the

DEP. Invoking the officer removal statute, 28 U.S.C.

1442(a)(1),Belaga transferredthe actionto federaldistrict court.2

to the company and the individual defendants, collectively, as
"Nyacol" or "the insureds." We note, moreover, that although
EPA, invoking a theory of successor liability, notified these
three defendants that they might be liable for EPA's response
costs (past and future), as well as for cleanup costs, EPA has
not yet sued to compel payment of these expenses or otherwise to
enforce its claimed rights.

2The officer removal statute provides in pertinent part:

A civil action or criminal prosecution
commenced in a State court against any of the
following persons may be removed by them to
the district court of the United States for
the district and division embracing the place
wherein it is pending:

4

On February 20, 1992, DEP agreed to be bound by a

declaration of rights in American's lawsuit insofar as the

judgment resolves insurance coverage issues. The case proceeded

against Belaga and the insureds. On May 12, 1992, the district

court granted Belaga's motion to dismiss, reasoning that a suit

against her, in her official capacity, was really a suit against

EPA and that, since EPA had never sued Nyacol or brought an

enforcement proceeding against it, American could articulate no

justiciable controversy with EPA. The court entered final

judgment for Belaga, see Fed. R. Civ. P. 54(b), and remanded all

other parties and claims to the state court. American appeals

from the dismissal order.

II

While the parties vigorously debate an insurance

company's ability, consistent with Article III's case or

controversy requirement, to join EPA in a coverage dispute before

EPA has brought an enforcement action against the insureds, our

discussion seeps into vastly different legal ground. The impetus

behind this diversion lies in the Supreme Court's opinion in

International Primate Protection League v. Administrators of

Tulane Educ. Fund, 111 S. Ct. 1700 (1991). Concerned about the

implications of Primate Protection League for federal court

(1) Any officer of the United States
or any agency thereof, or person acting under
him, for any act under color of such office .
. . .

28 U.S.C. 1442(a)(1) (1988).

5

jurisdiction, we requested supplemental briefing on whether this

action was properly removed to federal court. Both sides

responded that removal was valid under 28 U.S.C. 1442(a)(1)

because of Belaga's status as a federal officer.

Notwithstanding this accord, we must pursue the matter.

Litigants cannot confer subject matter jurisdiction by agreement.

See Insurance Corp. of Ir. v. Compagnie des Bauxites, 456 U.S.

694, 702 (1982); California v. LaRue, 409 U.S. 109, 113 n.3

(1972). Because a federal court is under an unflagging duty to

ensure that it has jurisdiction over the subject matter of the

cases it proposes to adjudicate, we are obliged to address the

propriety of removal as a threshold matter even though neither

party has raised a question in that regard. See Mansfield,

Coldwater & Lake Michigan Ry. Co. v. Swan, 111 U.S. 379, 382

(1884) (stating that a federal appellate court, on its own

motion, must "deny its own jurisdiction, and, in the exercise of

its appellate power, that of all other courts of the United

States, in all cases where such jurisdiction does not

affirmatively appear in the record").

A

The officer removal statute, 28 U.S.C. 1442 (a)(1),

quoted supra note 2, is designed to allow federal officers to

remove actions to federal court that would otherwise be

unremovable. See Willingham v. Morgan, 395 U.S. 402, 406-07

(1969) (stating that the section covers all cases in which

federal officers, sued in state court, "can raise a colorable

6

defense arising out of their duty to enforce federal law").3 In

Primate Protection League, the Supreme Court held that the

reference to "any agency" of the United States contained in the

officer removal statute did not stand alone, but constituted part

of a possessive phrase modifying the noun "officer." See 111 S.

Ct. at 1705. Put another way, the statute is to be read as if a

second "of" appeared in the text immediately following the

disjunctive "or." Hence, section 1442(a)(1) permits removal by

an "officer of . . . any agency [of the United States]," and,

conversely, does not permit removal by the federal agency itself.

See id. at 1709.

Although Primate Protection League makes it crystal

clear that EPA, as a federal agency, cannot remove an action to

federal court under color of section 1442(a)(1), this case

presents a variation on the theme: it requires that we decide

the closely related, but nonetheless different, question of

whether, for purposes of the officer removal statute, a suit

brought against an executive of an agency, exclusively in the

executive's official capacity, constitutes a suit against an

"officer," thereby permitting removal under the statute, or a

suit against an "agency," thereby precluding such removal. It is

3This is not to say that every case in which a federal

officer is a defendant is removable. Rather, removal is limited
to situations in which the officer's removal petition
demonstrates the existence of a federal defense. See Mesa v.

California, 489 U.S. 121, 136 (1989).

7

to this inquiry that we now turn.4

B

Generally, a suit against an officer in the officer's

official capacity constitutes a suit against the governmental

entity which the officer heads. For example, in Kentucky v.

Graham, 473 U.S. 159 (1985), the Court dwelt on the distinction

between suits against a person in an individual, as opposed to

official, capacity. The Court explained that while individual-

capacity actions "seek to impose personal liability upon a

government official," id. at 165 (emphasis supplied), payable out

of personal assets, see id. at 166, an official-capacity action

is, "in all respects other than name, to be treated as a suit

against the entity." Id. Phrased differently, "official-

capacity suits generally represent only another way of pleading

an action against an entity of which an officer is an agent."

Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 690

n.55 (1978). Thus, a string of Supreme Court cases holds that a

suit against a government officer in his or her official capacity

binds the agency or other governmental entity, not the officer

personally. See, e.g., Graham, 473 U.S. at 166; Brandon v. Holt,

469 U.S. 464, 471 (1985); cf. Larson v. Domestic & Foreign

Commerce Corp., 337 U.S. 682, 687 (1949) (explaining that, in

deciding whether a suit against a government officer is an

official-capacity or individual-capacity suit, "the crucial

4The officer removal statute was first enacted in its
present form in 1948. Its legislative history is of no
significant assistance in respect to the inquiry at hand.

8

question is whether the relief sought . . . is relief against the

sovereign").

The character of an official-capacity suit is not

transformed simply because jurisdiction is in issue. In Loeffler

v. Frank, 486 U.S. 549 (1988), a case in which the plaintiff sued

the Postmaster General in his official capacity, the Court held

that acts of a government officer in his official capacity "are

always chargeable" as acts of the agency for purposes of a sue-

and-be-sued clause. Id. at 563 n.8; see also FHA v. Burr, 309

U.S. 242, 249-50 (1940) (holding that a suit against the head of

an agency in his official capacity was indistinguishable from a

suit against the agency itself for purposes of a sue-and-be-sued

clause and that a waiver of immunity as to the agency head

necessarily waived the agency's immunity). Similarly, even when

pondering jurisdictional and quasi-jurisdictional issues, this

court has consistently accepted and applied the principle that an

official-capacity suit against a government officer is fully

equivalent to a suit against the agency. See, e.g., Northeast

Fed. Credit Union v. Neves, 837 F.2d 531, 533 (1st Cir. 1988)

("Where . . . claims are made against a government official

acting purely in a representative role, the suit must be regarded

as one against the sovereign."); Culebras Enters. Corp. v. Rivera

Rios, 813 F.2d 506, 516 (1st Cir. 1987) (observing that, for

Eleventh Amendment purposes, an official-capacity suit is

"tantamount to a suit against the [governmental entity]").

We see no reason to forsake the general rule that a

9

suit against a government officer in his or her official capacity

is a suit against the agency when considering the

appropriateness of removal under 28 U.S.C. 1442(a)(1). The

theme of Primate Protection League, logically extended, serves an

esemplastic purpose, shaping the officer removal statute into a

rational whole. In that case, the Supreme Court explained that

when a suit for monetary damages is brought against an officer in

his or her individual capacity, the complicated questions that

arise as to that officer's immunity support a protective grant of

removal jurisdiction. See Primate Protection League, 111 S. Ct.

at 1708. By contrast, agencies do not need the prophylaxis of

federal removal because determining an agency's immunity, unlike

determining an individual's immunity, is a "sufficiently

straightforward" proposition. Id. That rationale strongly

favors treatment of official-capacity suits for purposes of

removal in the same manner as suits against the agency. After

all, because a suit against an officer in her official capacity

cannot bind the officer personally, see, e.g., Brandon, 469 U.S.

at 471, no issues of immunity can possibly arise that differ from

those arising in a suit directly against the agency.

Consistency is the touchstone of statutory

interpretation. If we were to hold that a suit nominally against

EPA is not removable, as Primate Protection League demands, but

then go on to hold that a suit nominally against EPA's regional

administrator in her official capacity a suit that seeks a

judgment binding on the EPA is nonetheless removable, we would

10

spawn a glaring interpretive inconsistency and, in the bargain,

impugn the Primate Court's reasoning. Given the identity of

juridical interest that exists between a government agency and

its executive officer when the latter is sued only in his or her

official capacity, the fact that the agency may not remove an

action under the officer removal statute compels the conclusion

that an official-capacity defendant is likewise disabled from

initiating removal thereunder.5 See generally Primate

Protection League, 111 S. Ct. at 1708 (explaining that access to

removal under section 1442(a)(1) does not turn on a "mere

technicality").

C

Our conclusion is fortified by Judge Posner's opinion

in Western Secs. Co. v. Derwinski, 937 F.2d 1276 (7th Cir. 1991).

5Ordinarily, the question of whether a complaint names an
officer in a personal, as opposed to an official, capacity
requires little more than a glance at the pleadings. If,
however, a federal official, reasonably believing himself or
herself to be sued individually, attempts to remove under section
1442(a)(1), any dispute as to the officer's status will
necessarily be resolved by a federal court in the context of
assaying its own jurisdiction. See 14A Charles A. Wright et.

al., Federal Practice and Procedure 3730, at 499-500

(explaining that a defendant wishing to remove need only file a
notice of removal, with the result that the propriety of removal,
if challenged at all, will "be tested later in the federal court
by a motion to remand"). Thus, our holding that an officer sued
in an official capacity may not remove the action in order to
obtain a federal forum for resolution of the underlying merits
will in no way deprive the officer of access to a federal forum
for determination of whether the suit is in fact an action
against him or her personally. By the same token, if an officer
is sued in both individual and official capacities, we see no bar
to removal under section 1442(a)(1). See El Gran Video Club

Corp. v. E.T.D., Inc., 757 F. Supp. 151, 155 & n.3 (D.P.R. 1991)

(observing that federal courts have removal jurisdiction over all
pendent claims that are not "separate and independent").

11

There, the Seventh Circuit, acting sua sponte, refused to allow a

federal administrator sued in his official capacity to remove an

action to federal court under section 1442(a)(1). Acknowledging

that, in the aftermath of Primate Protection League, suits

against federal agencies cannot be removed under section

1442(a)(1), see id. at 1278, Judge Posner wrote that "while the

suit in this case is nominally against the Administrator, it is

against him in his official capacity and such suits are

considered to be against the government itself." Id. at 1279.

Thus, the court concluded that, absent an alternative basis for

jurisdiction, dismissal for want of subject matter jurisdiction

would be required. See id.6

We agree with the Seventh Circuit that Primate

Protection League, logically extended, mandates that a federal

officer sued solely in his or her official capacity may not

remove a suit to federal court under the aegis of 28 U.S.C.

1442(a)(1). In the case before us, this holding draws the sap

from the tree: American's suit, brought against Belaga in her

official capacity and seeking no relief against her personally,

is in reality a suit against the agency. It necessarily follows

that, because EPA itself could not have removed this action under

section 1442, see Primate Protection League, 111 S. Ct. at 1708,

Belaga's attempt to remove under the same statutory provision

must fail.

6In Derwinski the court retained jurisdiction because the

plaintiff's action arose under federal law. See Derwinski, 937

F.2d at 1280; see also 28 U.S.C. 1331, 1441 (1988).

12

III

Notwithstanding that this action was infelicitously

removed under 28 U.S.C. 1442(a)(1) and that the parties

steadfastly disclaim any independent basis for federal

jurisdiction,7 we inquire whether any other toehold for federal

court jurisdiction exists. Belaga's notice of removal did

mention 28 U.S.C. 1441 a statute which permits removal of any

suit that originally could have been brought in federal court.8

See, e.g., Merrell Dow Pharmaceuticals Inc. v. Thompson, 478 U.S.

804, 808 (1986). Thus, principles of equity, as well as the law,

compel us to explore whether American's declaratory judgment

action falls within the federal district court's original

jurisdiction. We proceed to run that gauntlet.

A

7The parties' appellate filings ground removal jurisdiction
solely in the officer removal statute. In answer to our express
inquiry anent jurisdiction, Belaga replied that the United
States, on her behalf, removed the action pursuant to 28 U.S.C.
1442(a)(1) and contended that such removal was proper. American
averred that, apart from the officer removal statute, it was "not
aware of any other basis for federal jurisdiction." Nyacol, by
electing not to participate in this appeal, has effectively
consented to the appropriateness of a state forum.

8The statute provides in pertinent part:

Except as otherwise expressly provided by Act
of Congress, any civil action brought in a
State court of which the district courts of
the United States have original jurisdiction,
may be removed by the defendant or the
defendants, to the district court of the
United States for the district and division
embracing the place where such action is
pending.

28 U.S.C. 1441(a) (1988).

13

In this instance, the presence of original jurisdiction

hinges upon the existence vel non of a federal question,9 that

is, the existence of an action "arising under the Constitution,

laws, or treaties of the United States." 28 U.S.C. 1331

(1988). Ordinarily, a claim arises under federal law within the

meaning of section 1331 if a federal cause of action appears on

the face of a well-pleaded complaint. See Gully v. First Nat'l

Bank in Meridian, 299 U.S. 109, 113 (1936); Louisville &

Nashville R.R. v. Mottley, 211 U.S. 149, 152 (1908). For

purposes of determining the existence of federal question

jurisdiction in a declaratory judgment action, however, the

Supreme Court directs our attention away from the face of the

complaint and focuses it instead on the law that creates the

underlying cause of action:

Where the complaint in an action for
declaratory judgment seeks in essence to
assert a defense to an impending or
threatened state court action, it is the
character of the threatened action, and not
of the defense, which will determine whether
there is federal-question jurisdiction . . .
.

Public Service Comm'n v. Wycoff Co., 344 U.S. 237, 248 (1952);

see also Franchise Tax Bd. v. Construction Laborers Vacation

Trust, 463 U.S. 1, 15-16 & n.14 (1983).

Here, American's declaratory judgment action represents

a mounted offensive on two related fronts: the suit is not only

9The parties to the lawsuit are not of totally diverse
citizenship and, apart from the possibility of a federal
question, there is no other arguable foundation for federal
jurisdiction.

14

an attempt to preempt impending actions by the insureds (seeking,

presumably, to secure a defense against charges of environmental

harm and to secure indemnification with respect to loss, costs,

damages, and expense associated therewith), but it is also an

attempt to foreclose governmental authorities from trying to

reach insurance proceeds to satisfy as-yet-unrealized judgments

under CERCLA. Thus, the underlying causes of action, howsoever

visualized, are in the nature of claims to enforce an insurance

contract, the adjudication of which will require interpretation

of various policy provisions and contract terms. A suit is

customarily deemed to arise under the law that gives birth to the

cause of action. See American Well Works Co. v. Layne & Bowler

Co., 241 U.S. 257, 260 (1916). Applying that approach, this case

is based solely upon, and, therefore, arises under, state

law.10 See CPC Int'l, Inc. v. Northbrook Excess & Surplus Ins.

Co., 962 F.2d 77, 97-98 (1st Cir. 1992) (divining applicable

state law to interpret a pollution exclusion clause in an

insurance policy); A. Johnson & Co. v. Aetna Cas. & Sur. Co., 933

F.2d 66, 70-74 (1st Cir. 1991) (same); Ryan v. Royal Ins. Co.,

10We note in passing that, were American to assert that
CERCLA preempts state insurance actions, such an assertion, while
mentioning federal law, would be insufficient to confer
jurisdiction because federal law would come into play only as a
defense. See Franchise Tax Bd., 463 U.S. at 13-14; Nashoba

Communications, Inc. v. Town of Danvers, 893 F.2d 435, 440 (1st

Cir. 1990); see also Hudson Ins. Co. v. American Elec. Corp., 957

F.2d 826, 830 n.4 (11th Cir.), cert. denied, 113 S. Ct. 411

(1992). We except, of course, the rare case, discussed infra p.

15-16, where federal law so completely displaces state causes of
action in a particular area that all such claims are "necessarily
federal in character." Metropolitan Life Ins. Co. v. Taylor, 481

U.S. 58, 63-64 (1987).

15

916 F.2d 731, 734-35 (1st Cir. 1990) (similar); In re Acushnet

River & New Bedford Harbor, 725 F. Supp. 1264, 1278-81 (D. Mass.

1989) (certifying various questions regarding the substantive

interpretation of an insurance policy to the Massachusetts

Supreme Judicial Court in order to determine an insurer's duty to

cover cleanup costs), aff'd in part and rev'd in part on other

grounds sub nom. Lumbermens Mut. Cas. Co. v. Belleville Indus.,

Inc., 938 F.2d 1423 (1st Cir. 1991), cert. denied, 112 S. Ct. 969

(1992); see also Hudson Ins. Co. v. American Elec. Corp., 957

F.2d 826, 828 (11th Cir.) (holding that an insured's potential

suit to recover insurance proceeds for its liability under CERCLA

arises under "the applicable state law governing the

interpretation of insurance contracts"), cert. denied, 113 S. Ct.

411 (1992). Federal jurisdiction cannot take root in this arid

soil.11

B

In an abundance of caution, we take one additional

step. There may exist unusual circumstances wherein a state-

created cause of action can be deemed to arise under federal law.

For example, when a plaintiff's state-created right to relief

11We note that CERCLA itself does not provide a direct cause
of action against a responsible party's liability insurer. See

Port Allen Marine Servs., Inc. v. Chotin, 765 F. Supp. 887, 889

(M.D. La. 1991) (dismissing claims brought directly against
carrier because CERCLA "does not create a direct right of action
against [PRP's] insurers"); cf. 42 U.S.C. 9608(c) (allowing

direct action against guarantors in limited circumstances). It
is, therefore, abundantly clear that American's declaratory
judgment complaint anticipates future coercive actions that not
only will be entirely governed by state law, but also will be
initiated only through state-created mechanisms.

16

"necessarily depends on resolution of a substantial question of

federal law," Franchise Tax Bd., 463 U.S. at 28, or when a

parallel "federal cause of action completely pre-empts a state

cause of action," id. at 24, the suit is considered a creature of

federal law. We test these waters.

The latter proposition (complete preemption) can be

summarily dismissed. Structurally, CERCLA provides "no parallel

federal cause of action for the recovery of insurance proceeds

for CERCLA-created liability." Hudson, 957 F.2d at 830. Rather,

its provisions, read objectively, choreograph a pas de deux

wherein CERCLA-driven suits to collect insurance proceeds are to

be brought under state law. See, e.g., 42 U.S.C. 9607(e)(1)

(preserving "any agreement to insure, hold harmless, or indemnify

a party" for CERCLA liability). We turn, then, to the former

proposition (necessary dependence on a federal-law question).

Conceivably, American might argue that a suit to compel

it to defend and/or indemnify its insureds is one that, though

created by state law, necessarily turns on federal common law.

However, such an argument amounts to a call for the application

of a uniform federal rule of decision to govern interpretation of

an insurance policy's scope of coverage vis-a-vis CERCLA

liability. We decline to heed that call in the face of solid

precedent pointing in the opposite direction. The massed

authority for treating insurance coverage questions in CERCLA

cases as peculiarly matters of state law pervades the courts of

appeals. See, e.g., Northbrook, 962 F.2d at 79; Northern Ins.

17

Co. v. Aardvark Assocs., Inc., 942 F.2d 189, 192 (3d Cir. 1991);

Liberty Mut. Ins. Co. v. Triangle Indus., Inc., 957 F.2d 1153,

1157 (4th Cir.), cert. denied, 113 S. Ct. 78 (1992); FL Aerospace

v. Aetna Cas. & Sur. Co., 897 F.2d 214, 219 (6th Cir.), cert.

denied, 111 S. Ct. 284 (1990); Aetna Cas. & Sur. Co. v. General

Dynamics Corp., 968 F.2d 707, 710 (8th Cir. 1992); Industrial

Indemnity Ins. Co. v. Crown Auto Dealerships, Inc., 935 F.2d 240,

241 (11th Cir. 1991). State courts chime in tune. See, e.g.,

Hazen Paper, 555 N.E.2d at 579; Boeing Co. v. Aetna Cas. & Sur.

Co., 784 P.2d 507, 509 (Wash. 1990); Technicon Elecs. Corp. v.

American Home Assurance Co., 542 N.E.2d 1048, 1050-51 (N.Y.

1989).

Case law aside, we doubt that Congress intended CERCLA

to be the springboard for catapulting federal courts into what

has historically been a state-law preserve. Congress has made it

plain that federal legislation should rarely be interpreted to

encroach on a state's regulation of insurance. See, e.g.,

McCarran-Ferguson Act, 15 U.S.C. 1012(b) (1988). Nothing in

CERCLA suggests that Congress intended to deviate from this

regimen. Indeed, CERCLA's text not only envisions the bringing

of suits under state law but specifically mandates their

resolution in accordance with that law. See 42 U.S.C. 9672(a)

(stating that CERCLA's insurance subchapter "shall [not] be

construed to affect . . . the law governing the interpretation of

insurance contracts of any State"). Thus, CERCLA effectively

rebuts the claim that its drafters intended to transform state-

18

law insurance actions into actions arising under federal law.

We think that the situation at hand is closely

analogous to that which confronted us in Royal v. Leading Edge

Prods., Inc., 833 F.2d 1 (1st Cir. 1987). There, a plaintiff

sought to recover for breach of a royalty agreement related to a

copyrighted work. In an effort to maintain federal jurisdiction,

he argued that his case arose under the federal copyright laws.

See id. at 2. We disagreed, pointing out that when an action is

brought to enforce a royalty contract the action arises out of

the contract and not under the copyright statute, even though the

contract concerns a copyright. See id. at 4. By the same token,

an action brought to enforce the pollution-coverage provisions of

an insurance policy arises out of the policy and not under

federal environmental law, even though any potential recovery

under the policy will satisfy a CERCLA-generated liability.

Accord Hudson, 957 F.2d at 829-30. In this case, as in Royal, it

would be wrong to arrogate unto the federal courts "jurisdiction

over what is essentially a garden-variety contract dispute."

Royal, 833 F.2d at 5.

In fine, because the insurance dispute which American's

declaratory judgment action anticipates is a creature of state

law and cannot be said to arise under federal law, original

federal question jurisdiction and, by extension, removal

jurisdiction under 28 U.S.C. 1441(a) does not lie.

IV

Since neither section 1442 nor section 1441 supports

19

the removal of American's declaratory judgment action, there is

simply no serviceable hook on which federal jurisdiction can be

hung. We, therefore, go no further. Inasmuch as the lower court

lacked subject matter jurisdiction, its order dismissing the

action against EPA is null. See Insurance Corp. of Ir., 456 U.S.

at 701 ("The validity of an order of a federal court depends upon

that court's having jurisdiction over . . . the subject matter .

. . ."). We vacate the dismissal order and direct that the

district court reinstate Belaga, in her official capacity, as a

party and thereafter return the improvidently removed action to

the court from whence it emanated.12

Vacated and remanded with directions. No costs.

12We take no view of Belaga's claims of sovereign immunity,
non-justiciability, unripeness and the like. We are similarly
noncommittal as to the effect, if any, of remand on the
stipulation entered into between American and DEP. Because the
federal courts lack jurisdiction, all such matters must be
presented to, and resolved by, the state courts.

20