**James B. ROYAL, Plaintiff, Appellant,**

v.

**LEADING EDGE PRODUCTS, INC.,
Defendant, Appellee.**

**No. 87–1418.**

United States Court of Appeals,
First Circuit.

Argued Sept. 15, 1987.

Decided Oct. 20, 1987.

Thomas F. Maffei, with whom Scott A. Faust and Choate, Hall & Stewart, Boston, Mass., were on brief, for plaintiff, appellant.

Mark A. Berthiaume, Baltimore, Md., with whom Gary R. Greenberg, P.C. and Goldstein & Manello, Boston, Mass., were on brief, for defendant, appellee.

Before BOWNES, TORRUELLA and SELYA, Circuit Judges.

SELYA, Circuit Judge.

James B. Royal, plaintiff-appellant, felt that he was treated less than royally by his quondam employer, Leading Edge Products, Inc. (Leading Edge), defendant-appellee. He sued, unsuccessfully, in federal district court, and now appeals.

Inasmuch as the district court disposed of this case on Leading Edge's motion to dismiss, Fed.R.Civ.P. 12(b)(1), we accept the factual averments of the complaint as true, and construe those facts in the light most congenial to the appellant's cause. *Guessefeldt v. McGrath,* 342 U.S. 308, 310, 72 S.Ct. 338, 340, 96 L.Ed. 342 (1952); *Chongris v. Board of Appeals,* 811 F.2d 36, 37 (1st Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 3266, 97 L.Ed.2d 765 (1987). We eschew, however, any reliance upon "bald assertions, unsupportable conclusions, [or] opprobrious epithets." *Id.* (citation omitted). Dismissal can be justified only if it clearly appears that no colorable hook exists upon which subject matter jurisdiction can be hung.

I

The defendant is a Massachusetts corporation involved in various facets of the computer industry. According to the complaint, Leading Edge hired Royal in mid–1982 as manager of word processing development. The complaint does not state whether or not there was a written employment contract. In February of 1983, while still in defendant's employ, Royal and a co-worker, one Phil Florence, entered into a royalty agreement with the company. *See* Appendix. In essence, the pair agreed to develop a distinctive "software package" in exchange for stipulated royalty payments based on future sales. In the appellant's words, "[t]he contractual relationship established between the parties by virtue of the royalty agreement was entirely separate and distinct from their employment relationship." Complaint ¶ 7.

Florence and Royal successfully accomplished their goal before the year was out. As completed, the package was an original work comprising copyrightable subject matter under federal law. Yet, notwithstanding what plaintiff (self-interestedly) describes as the "exceptionally high quality" of the product, *id.* at ¶ 10, Leading Edge terminated his employment on April 29, 1986. It has not been alleged that the firing was in contravention of any express term of either the royalty agreement or the underlying employment agreement.

Appellant has not been paid royalties for any period after April 29, 1986. Under the royalty contract, no further royalties would be due if he was fired for cause; but, if he was discharged "for no cause," then he would be entitled to royalties for a period of "five (5) years from date of termination." The complaint alleges that he was terminated "without cause." Complaint ¶ 11.

## II

The plaintiff's pleading limned four causes of action, viz:

Count I: A request for issuance of a declaratory judgment that Royal was a co-owner of the copyright in the software package as of April 29, 1986, together with an accounting for profits derived since that date.

Count II: A claim for damages for breach of the royalty agreement (nonpayment of royalties).

Count III: An unfair trade practice claim for treble damages under Mass.Gen.L. c. 93A, § 11.

Count IV: A common law damages claim for breach of an implied covenant of good faith and fair dealing.

There is no diversity of citizenship or other basis for federal jurisdiction apart from the existence *vel non* of some cognizable federal question. Royal concedes that the last three counts of his complaint are dependent entirely on state law, and present no

uniquely federal aspects. He endeavors to forge his jurisdictional hook solely on the anvil of Count I. As the plaintiff envisions the universe, the district court had subject matter jurisdiction over that count by virtue of 28 U.S.C. § 1338(a),[1] thus gaining pendent jurisdiction over the trio of state-law claims. The district court disagreed, and so do we.

## III

The plaintiff asserts that his claim for a declaratory judgment is rooted in federal copyright law, thus triggering the jurisdictional snare of § 1338(a). But, that is a ketchup bottle of an argument: it looks full at first glance, but it is surpassingly difficult to get anything out of it.

It is settled beyond peradventure that an action does not "arise under" the federal copyright laws merely because it relates to a product that is the subject of a copyright. *See Topolos v. Caldewey*, 698 F.2d 991, 993 (9th Cir.1983). The question of whether the suit "arises under" the copyright law is considerably more sophisticated. The most frequently cited test is that formulated by the Second Circuit, along the lines that:

an action "arises under" the Copyright Act if and only if the complaint is for a remedy expressly granted by the Act, e.g., a suit for infringement ..., or asserts a claim requiring construction of the Act, ..., or, at the very least and perhaps more doubtfully, presents a case where a distinctive policy of the Act requires that federal principles control the disposition of the claim. The general interest that copyrights, like all other forms of property, should be enjoyed by their true owner is not enough to meet this last test.

*T.B. Harms Co. v. Eliscu*, 339 F.2d 823, 828 (2d Cir.1964), *cert. denied*, 381 U.S. 915, 85 S.Ct. 1534, 14 L.Ed.2d 435 (1965). Royal acknowledges that *Harms* sets forth the applicable standard, but urges that the first count of his complaint "asserts a claim

---

**1.** 28 U.S.C. § 1338(a) provides in pertinent part as follows:

The district courts shall have original jurisdiction of any civil action arising under any Act

of Congress relating to patents, plant variety protection, copyrights and trade-marks.

requiring construction of the Act," *id.*, because it implicates the so-called work-made-for-hire doctrine.

A brief explanation is in order. The Copyright Act defines a "work made for hire" in relevant part as one "prepared by an employee within the scope of his or her employment." 17 U.S.C. § 101.[2] The Act further provides that:

> In the case of a work made for hire, the employer ... is considered the author ..., and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright.

17 U.S.C. § 201(b).

Royal admits that the copyright to the software package inured to his employer, Leading Edge, by virtue of the work-made-for-hire doctrine. He contends, however, that appellee's ensuing breach of the royalty agreement—the refusal to pay Royal royalties past the date he was cashiered—entitled him to rescind the agreement and to regain his ownership rights. But in our view, there is less to this argument than meets the eye. Royal's assertions grow out of his purported contract rights and "arise under" state law. The work-made-for-hire doctrine is, at best, only tangentially implicated. Indeed, it is not even mentioned in the complaint.

At bottom, there are only two possibilities: if the royalty agreement stands, then the plaintiff's sole remedy for the breach of it would be money damages—and the Copyright Act need not be construed. If, however, as plaintiff suggests, the royalty agreement is subject to rescission because of defendant's material breach thereof, then that agreement would vanish. We would be left with no "written instrument" signed by the parties, 17 U.S.C. § 201(b), and the employer would be "considered the author" in the absence of such an instrument. *Id.* Either way, appellant would have no statutorily-based ownership rights. So, as to the jurisdictional question, Royal finds himself in a classic no-win situation.

In an effort to avoid the seemingly inexorable result of this logic, plaintiff points to some indications in a few district court cases that, since an employer's status *qua* copyright proprietor can be conceptualized as stemming from a presumed agreement between employer and employee—"I will give you a job; you will give me the copyright"—then a breach of that "unspoken bargain" would entitle the employee to rescind the employment agreement and reclaim the copyright. *See, e.g., Black v. Pizza Time Theatres, Inc.,* 1983 Copyright L.Rep. (CCH) ¶ 25,569 (N.D.Cal.1983) [Available on WESTLAW, DCT database]; *Brown v. Cosby,* 433 F.Supp. 1331, 1343 (E.D.Pa.1977); *Hughey v. Palographics Co.,* 189 U.S.P.Q. (BNA) 527, 529–31 (D.Colo.1976). *See also* 1 M. Nimmer, *Nimmer On Copyright* § 5.03[E] (1986). Yet, we need not probe too deeply into the somewhat dubious provenance of this theory. Assuming without deciding that such an exception may come into play in a proper case, Royal does not profit.

In this instance, there is scant reason to *imply* any arrangement between employer and employee as to ownership of the copyright. The royalty agreement makes clear that the trade-off for the proprietary copyright interest is not a job, but the payment of royalties. *See* Appendix. That unambiguous compact occupies the field. It makes explicit provision with respect to what consequences will flow from termination of the author's employment—whether for cause, without cause, or in the event of Royal's voluntary departure. *See id.* Reversion of the copyright is not among those consequences. Where, as here, the contract itself is clear, courts must be loath to presume added promises out of thin air. *Cf., e.g., Mathewson Corp. v. Allied Marine Industries, Inc.,* 827 F.2d 850, 855–56 (1st Cir.1987); *Allied Communications Corp. v. Continental Cellular Corp.,* 821 F.2d 69, 73–74 (1st Cir.1987). The express terms of Royal's bargain with the company

**2.** The statute also includes within its definition of works made for hire certain categories of specially ordered and commissioned creations. Appellant concedes that none of these more exotic categories has pertinence to the case at bar.

leave no room for unstated conditions to creep into the deal.

Furthermore, the plaintiff has described the royalty agreement and the employment agreement as being separate and distinct. Complaint ¶ 7. He has averred not that Leading Edge committed a material breach of the latter, but that it fractured the former. Not even the frail strands by which Royal's theory hangs extend so far: there is neither authority nor precedent for the assertion that a breach of a *royalty agreement alone* catalyzes an implicit exception to the work-made-for-hire doctrine. Taking the facts which appellant has alleged at face value, they are insufficient to animate his "unspoken bargain" asseveration.

## IV

The crowning blow, perhaps, is the generic obligation of a court to "decide whether a case arises under the copyright laws by focusing on the nature of the principal claim asserted by the plaintiff." *Topolos v. Caldewey,* 698 F.2d at 993. It can scarcely be argued that appellant's claim, in its very nature and essence, is one for breach of contract, that is, a suit protesting Leading Edge's supposed failure to honor the five-year royalty schedule once it had shown Royal the door. A determination of the controversy depends in the first instance upon whether or not there has been compliance with the terms of the royalty agreement, and if not, what should be the effect of that noncompliance as a contractual matter. In that sense, the situation is analogous to *Beghin–Say International Inc. v. Rasmussen,* 733 F.2d 1568 (Fed.Cir. 1984), a case where the plaintiff sued for a declaration that the assignment of certain U.S. patent applications was "valid" under 35 U.S.C. § 261 and sufficed to vest in it "all right to the invention(s) set forth in those applications." *Id.* at 1570. The district court dismissed for want of subject matter jurisdiction, holding that "the action did not arise under any Act of Congress

relating to patents within the meaning of 28 U.S.C. § 1338(a)." *Id.*[3] The Federal Circuit affirmed the dismissal, observing that nothing in § 1338(a) "confers federal jurisdiction over mere private contract disputes." *Id.* at 1571. Like *Beghin–Say,* this suit "sounds exclusively in contract." *Id.* at 1570. And, we find the reasoning of the Federal Circuit to be apposite here.

We mention, too, the decision of the Sixth Circuit in *Combs v. Plough, Inc.,* 681 F.2d 469 (6th Cir.1982) (per curiam). There, Combs, an inventor, obtained a patent. He assigned it to his employer and executed a release. Five years later, he sued for patent infringement. He also prayed for a declaration that the release and assignment were void and for an accounting. The Court of Appeals upheld the dismissal of Combs's suit for want of subject matter jurisdiction, holding that his action was not one "arising under" 28 U.S.C. § 1338(a). 681 F.2d at 470–71. The court noted the usual rule that, "where an action is brought to enforce, set aside, or annul a contract, the action arises out of the contract, and not under the patent laws, even though the contract concerns a patent right." *Id.* at 470 (citations omitted). *See also Ausherman v. Stump,* 643 F.2d 715, 718 (10th Cir.1981) (similar).

As we see it, the plaintiff has asserted no colorable claim of right under the copyright laws. After all, suits which seek royalties or the enforcement of remedies in respect of contracts permitting the use of patents have frequently been held not to "arise under" § 1338(a) in a jurisdictional sense. *E.g., Luckett v. Delpark, Inc.* 270 U.S. 496, 502, 46 S.Ct. 397, 399, 70 L.Ed. 703 (1926); *Schwarzkopf Development Corp. v. Ti-Coating, Inc.,* 800 F.2d 240, 243–44 (Fed. Cir.1986). The same salutary principle, we think, applies to an action like this one, seeking remediation in respect to an allegedly broken royalty agreement anent copyrightable material.[4]

---

**3.** The "arising under" language of 28 U.S.C. § 1338(a) applies equally to patents and copyrights. *See supra* n. 1.

**4.** We note that the same result has been reached in disputes over, say, title to a copyright, growing out of some ostensible breach of contract. *See Rotardier v. Entertainment Co. Music Group,* 518 F.Supp. 919, 921 (S.D.N.Y.1981); *Royalty*

In order to gain access to a federal forum, a litigant must allege particulars which raise some substantial federal issue. The meagre helping of facts served up by this plaintiff do not meet the standards for such a bill of fare. Though "that which we call a rose by any other name would smell as sweet," W. Shakespeare, *Romeo and Juliet* (1595), we must parse causes of action as they are, not as the pleader might fondly wish they were. "The jurisdiction of the federal district courts cannot be manipulated by the simple expedient of creative labelling." *Ferris v. General Dynamics Corp.*, 645 F.Supp. 1354, 1358 (D.R.I.

1986). Accordingly, we decline appellant's invitation to dance at a masquerade ball. We will not assume jurisdiction over what is essentially a garden-variety contract dispute, notwithstanding Royal's heroic efforts to costume it in the guise of a copyright action.

## V

We need go no further.[5] For the reasons mentioned, the district court was justified in dismissing the complaint for want of subject matter jurisdiction.

*Affirmed.*

## APPENDIX

Feb. 25, 1984

The following points constitute an Agreement:

(1) The Product is known as the "Word Processing Software Package." A detailed definition is attached.

(2) For the purposes of that agreement, Phil and J.B. shall be treated as individuals.

(3) The Royalty paid quarterly on Gross Sales shall be a total of 11.5%. The payment of the royalties shall be 6% to Phil, 5½% to J.B.

(4) The parties agree to support the product for the lifetime of the contract. As long as they receive royalties, then J.B. and Phil agree not to compete.

(5) In the case of involuntary termination for cause, no royalties are due and payable. If for no cause, then Phil and/or J.B. are to be paid royalties for five (5) years from date of termination. Cause is stealing.

(6) In the case of voluntary termination, with a minimum of six (6) months' notice, Phil and J.B. are entitled to be paid royalties as follows:

—eighteen months if either or both Phil and J.B. leave within one year after release to the market of the Product.

—twenty-four months if either or both Phil and J.B. leave in the second year after release.

—if either or both leave in the third year or thereafter, then royalties will be paid for thirty (30) months.

—in the case of death of either or both parties, royalties shall be paid for thirty-six (36) months.

(7) Upon the release of the finished product, there will be an advance against royalties of $50,000 to Phil. A finished product is defined as one that both J.B. and Phil say will be ready to take to market within thirty (30) days.

*Control Corp. v. Sanco, Inc.,* 175 U.S.P.Q. 641, 642 (N.D.Cal.1972); *cf. Beghin–Say, supra* (title to patents). In such instances, courts have typically reasoned the claims were "dependent upon principles of common law and equity, not the federal copyright laws." *Rotardier,* 518 F.Supp. at 921. *Combs, supra,* echoes this same theme. 681 F.2d at 471.

5. Because the appeal is susceptible of decision on the stated grounds, we need not address appellee's further contention that the complaint falls short of invoking the district court's jurisdiction because its federal law nexus "amounts to no more than an anticipatory defense...." *Greenfield and Montague Transportation Area v. Donovan,* 758 F.2d 22, 26 (1st Cir.1985). *Cf. C.R. Bard, Inc. v. Schwartz,* 716 F.2d 874, 879 (Fed.Cir.1983) (patent claim cannot "arise under" § 1338(a) where it "is merely a defense to a state court action").

**6**

(8) Leading Edge, Phil, and J.B. will provide, in mutual good faith, the facilities necssary to complete the Product expeditiously.

(9) For the purpose of determining royalties on the word processing product when it is sold by LEP as part of another product and there is no separate price for the word processing package, the price will be the lowest price on the OEM schedule.

(s)_____    Leading Edge Products, Inc.
         Phil Florence

(s)_____    _____
         J.B. Royal                    Michael B. Shane
                                        Chairman of the Board