USCA1 Opinion

 

 March 10, 1993 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _________________________ No. 92-1949 AMERICAN POLICYHOLDERS INSURANCE COMPANY, Plaintiff, Appellant, v. NYACOL PRODUCTS, INC., ET AL., Defendants, Appellees. _________________________ ERRATA SHEET ERRATA SHEET The opinion of the Court issued on February 24, 1993, is corrected as follows: On page 16, line 25 insert semicolon after "579" On page 18, line 15 change "support" to "supports" February 24, 1993 UNITED STATES COURT OF APPEALS For The First Circuit _________________________ No. 92-1949 AMERICAN POLICYHOLDERS INSURANCE COMPANY, Plaintiff, Appellant, v. NYACOL PRODUCTS, INC., ET AL., Defendants, Appellees. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. William G. Young, U.S. District Judge] ___________________ _________________________ Before Selya, Circuit Judge, _____________ Coffin, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ _________________________ Jennifer S.D. Roberts, with whom Rackemann, Sawyer & _______________________ ______________________ Brewster, P.C. was on brief, for appellant. ______________ Catherine M. Flanagan, Attorney, Department of Justice, ______________________ Environment & Natural Resources Division, with whom Vicki A. _________ O'Meara, Acting Assistant Attorney General, and David C. Shilton, _______ ________________ Attorney, Environment & Natural Resources Division, were on brief, for Julie Belaga, Regional Administrator, U.S. Environmental Protection Agency, appellee. _________________________ February 24, 1993 _________________________ SELYA, Circuit Judge. This appeal, which arises out of SELYA, Circuit Judge. _____________ an insurance company's efforts to secure a binding declaration of its rights and responsibilities under an insurance contract, poses an intriguing question: does the "officer removal" statute, 28 U.S.C. 1442(a)(1), permit a federal official, sued only in her representative capacity, to remove an action to federal district court? Because we think that the statute does not confer such a right, and because there is no other cognizable basis for federal jurisdiction, we return the case to the district court with instructions that it be remitted to a state forum. I I From 1917 until 1977, a succession of dye-houses occupied a thirty-five acre plot in Ashland, Massachusetts. During these six decades, toxic wastes impregnated the site. Eventually, the United States Environmental Protection Agency (EPA) and the Massachusetts Department of Environmental Protection (DEP) discovered the pollution and documented its source in the dye manufacturing processes. In early 1982, EPA notified Nyacol Products, Inc. (Nyacol), a producer of colloidal silicas at a portion of the site, that it considered Nyacol a potentially responsible party (PRP) under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. 9601-9626, 9651-9662, 9671-9675.1 ____________________ 1EPA also branded two of Nyacol's officers, Robert Lurie and Thomas L. O'Connor, as PRPs. Lurie and O'Connor are named as defendants in the instant suit. For ease in reference, we refer 3 Pursuant to Massachusetts law, which deems PRP notices equivalent to law suits for the purpose of triggering an insurer's duty to defend, see Hazen Paper Co. v. United States ___ _______________ _____________ Fid. & Guar. Co., 555 N.E.2d 576, 581 (Mass. 1990), Nyacol called ________________ upon its insurance carrier, plaintiff-appellant American Policyholders Insurance Company (American), to defend it against EPA's claims and to indemnify it for loss, costs, damages, or other expense related thereto. American provisionally undertook the company's defense under its general liability policy. In December of 1991, American brought suit in a Massachusetts state court seeking a declaration that it had no obligation to defend or recompense its insureds. In addition to naming the insureds as parties defendant, American joined two other defendants: Julie Belaga, in her capacity as EPA'S Regional Administrator, and Daniel S. Greenbaum, in his capacity as Commissioner of the DEP. Invoking the officer removal statute, 28 U.S.C. 1442(a)(1),Belaga transferredthe actionto federaldistrict court.2 ____________________ to the company and the individual defendants, collectively, as "Nyacol" or "the insureds." We note, moreover, that although EPA, invoking a theory of successor liability, notified these three defendants that they might be liable for EPA's response costs (past and future), as well as for cleanup costs, EPA has not yet sued to compel payment of these expenses or otherwise to enforce its claimed rights. 2The officer removal statute provides in pertinent part: A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending: 4 On February 20, 1992, DEP agreed to be bound by a declaration of rights in American's lawsuit insofar as the judgment resolves insurance coverage issues. The case proceeded against Belaga and the insureds. On May 12, 1992, the district court granted Belaga's motion to dismiss, reasoning that a suit against her, in her official capacity, was really a suit against EPA and that, since EPA had never sued Nyacol or brought an enforcement proceeding against it, American could articulate no justiciable controversy with EPA. The court entered final judgment for Belaga, see Fed. R. Civ. P. 54(b), and remanded all ___ other parties and claims to the state court. American appeals from the dismissal order. II II While the parties vigorously debate an insurance company's ability, consistent with Article III's case or controversy requirement, to join EPA in a coverage dispute before EPA has brought an enforcement action against the insureds, our discussion seeps into vastly different legal ground. The impetus behind this diversion lies in the Supreme Court's opinion in International Primate Protection League v. Administrators of __________________________________________ _________________ Tulane Educ. Fund, 111 S. Ct. 1700 (1991). Concerned about the _________________ implications of Primate Protection League for federal court __________________________ ____________________ (1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office . . . . 28 U.S.C. 1442(a)(1) (1988). 5 jurisdiction, we requested supplemental briefing on whether this action was properly removed to federal court. Both sides responded that removal was valid under 28 U.S.C. 1442(a)(1) because of Belaga's status as a federal officer. Notwithstanding this accord, we must pursue the matter. Litigants cannot confer subject matter jurisdiction by agreement. See Insurance Corp. of Ir. v. Compagnie des Bauxites, 456 U.S. ___ ______________________ _______________________ 694, 702 (1982); California v. LaRue, 409 U.S. 109, 113 n.3 __________ _____ (1972). Because a federal court is under an unflagging duty to ensure that it has jurisdiction over the subject matter of the cases it proposes to adjudicate, we are obliged to address the propriety of removal as a threshold matter even though neither party has raised a question in that regard. See Mansfield, ___ __________ Coldwater & Lake Michigan Ry. Co. v. Swan, 111 U.S. 379, 382 ___________________________________ ____ (1884) (stating that a federal appellate court, on its own motion, must "deny its own jurisdiction, and, in the exercise of its appellate power, that of all other courts of the United States, in all cases where such jurisdiction does not affirmatively appear in the record"). A A The officer removal statute, 28 U.S.C. 1442 (a)(1), quoted supra note 2, is designed to allow federal officers to _____ remove actions to federal court that would otherwise be unremovable. See Willingham v. Morgan, 395 U.S. 402, 406-07 ___ __________ ______ (1969) (stating that the section covers all cases in which federal officers, sued in state court, "can raise a colorable 6 defense arising out of their duty to enforce federal law").3 In Primate Protection League, the Supreme Court held that the ___________________________ reference to "any agency" of the United States contained in the officer removal statute did not stand alone, but constituted part of a possessive phrase modifying the noun "officer." See 111 S. ___ Ct. at 1705. Put another way, the statute is to be read as if a second "of" appeared in the text immediately following the disjunctive "or." Hence, section 1442(a)(1) permits removal by an "officer of . . . any agency [of the United States]," and, conversely, does not permit removal by the federal agency itself. See id. at 1709. ___ ___ Although Primate Protection League makes it crystal __________________________ clear that EPA, as a federal agency, cannot remove an action to federal court under color of section 1442(a)(1), this case presents a variation on the theme: it requires that we decide the closely related, but nonetheless different, question of whether, for purposes of the officer removal statute, a suit brought against an executive of an agency, exclusively in the ___________________ executive's official capacity, constitutes a suit against an ______________________________ "officer," thereby permitting removal under the statute, or a suit against an "agency," thereby precluding such removal. It is ____________________ 3This is not to say that every case in which a federal _____ officer is a defendant is removable. Rather, removal is limited to situations in which the officer's removal petition demonstrates the existence of a federal defense. See Mesa v. ___ ____ California, 489 U.S. 121, 136 (1989). __________ 7 to this inquiry that we now turn.4 B B Generally, a suit against an officer in the officer's official capacity constitutes a suit against the governmental entity which the officer heads. For example, in Kentucky v. ________ Graham, 473 U.S. 159 (1985), the Court dwelt on the distinction ______ between suits against a person in an individual, as opposed to official, capacity. The Court explained that while individual- capacity actions "seek to impose personal liability upon a ________ government official," id. at 165 (emphasis supplied), payable out ___ of personal assets, see id. at 166, an official-capacity action ___ ___ is, "in all respects other than name, to be treated as a suit against the entity." Id. Phrased differently, "official- ___ capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 690 ______ ____________________________________ n.55 (1978). Thus, a string of Supreme Court cases holds that a suit against a government officer in his or her official capacity binds the agency or other governmental entity, not the officer personally. See, e.g., Graham, 473 U.S. at 166; Brandon v. Holt, ___ ____ ______ _______ ____ 469 U.S. 464, 471 (1985); cf. Larson v. Domestic & Foreign ___ ______ ____________________ Commerce Corp., 337 U.S. 682, 687 (1949) (explaining that, in ______________ deciding whether a suit against a government officer is an official-capacity or individual-capacity suit, "the crucial ____________________ 4The officer removal statute was first enacted in its present form in 1948. Its legislative history is of no significant assistance in respect to the inquiry at hand. 8 question is whether the relief sought . . . is relief against the sovereign"). The character of an official-capacity suit is not transformed simply because jurisdiction is in issue. In Loeffler ________ v. Frank, 486 U.S. 549 (1988), a case in which the plaintiff sued _____ the Postmaster General in his official capacity, the Court held that acts of a government officer in his official capacity "are always chargeable" as acts of the agency for purposes of a sue- and-be-sued clause. Id. at 563 n.8; see also FHA v. Burr, 309 ___ ___ ____ ___ ____ U.S. 242, 249-50 (1940) (holding that a suit against the head of an agency in his official capacity was indistinguishable from a suit against the agency itself for purposes of a sue-and-be-sued clause and that a waiver of immunity as to the agency head necessarily waived the agency's immunity). Similarly, even when pondering jurisdictional and quasi-jurisdictional issues, this court has consistently accepted and applied the principle that an official-capacity suit against a government officer is fully equivalent to a suit against the agency. See, e.g., Northeast ___ ____ _________ Fed. Credit Union v. Neves, 837 F.2d 531, 533 (1st Cir. 1988) __________________ _____ ("Where . . . claims are made against a government official acting purely in a representative role, the suit must be regarded as one against the sovereign."); Culebras Enters. Corp. v. Rivera ______________________ ______ Rios, 813 F.2d 506, 516 (1st Cir. 1987) (observing that, for ____ Eleventh Amendment purposes, an official-capacity suit is "tantamount to a suit against the [governmental entity]"). We see no reason to forsake the general rule that a 9 suit against a government officer in his or her official capacity is a suit against the agency when considering the appropriateness of removal under 28 U.S.C. 1442(a)(1). The theme of Primate Protection League, logically extended, serves an _________________________ esemplastic purpose, shaping the officer removal statute into a rational whole. In that case, the Supreme Court explained that when a suit for monetary damages is brought against an officer in his or her individual capacity, the complicated questions that arise as to that officer's immunity support a protective grant of removal jurisdiction. See Primate Protection League, 111 S. Ct. ___ _________________________ at 1708. By contrast, agencies do not need the prophylaxis of federal removal because determining an agency's immunity, unlike determining an individual's immunity, is a "sufficiently straightforward" proposition. Id. That rationale strongly ___ favors treatment of official-capacity suits for purposes of removal in the same manner as suits against the agency. After all, because a suit against an officer in her official capacity cannot bind the officer personally, see, e.g., Brandon, 469 U.S. ___ ____ _______ at 471, no issues of immunity can possibly arise that differ from those arising in a suit directly against the agency. Consistency is the touchstone of statutory interpretation. If we were to hold that a suit nominally against EPA is not removable, as Primate Protection League demands, but _________________________ then go on to hold that a suit nominally against EPA's regional administrator in her official capacity a suit that seeks a judgment binding on the EPA is nonetheless removable, we would 10 spawn a glaring interpretive inconsistency and, in the bargain, impugn the Primate Court's reasoning. Given the identity of _______ juridical interest that exists between a government agency and its executive officer when the latter is sued only in his or her official capacity, the fact that the agency may not remove an action under the officer removal statute compels the conclusion that an official-capacity defendant is likewise disabled from initiating removal thereunder.5 See generally Primate ___ _________ _______ Protection League, 111 S. Ct. at 1708 (explaining that access to __________________ removal under section 1442(a)(1) does not turn on a "mere technicality"). C C Our conclusion is fortified by Judge Posner's opinion in Western Secs. Co. v. Derwinski, 937 F.2d 1276 (7th Cir. 1991). _________________ _________ ____________________ 5Ordinarily, the question of whether a complaint names an officer in a personal, as opposed to an official, capacity requires little more than a glance at the pleadings. If, however, a federal official, reasonably believing himself or herself to be sued individually, attempts to remove under section 1442(a)(1), any dispute as to the officer's status will necessarily be resolved by a federal court in the context of assaying its own jurisdiction. See 14A Charles A. Wright et. ___ al., Federal Practice and Procedure 3730, at 499-500 ___________________________________ (explaining that a defendant wishing to remove need only file a notice of removal, with the result that the propriety of removal, if challenged at all, will "be tested later in the federal court by a motion to remand"). Thus, our holding that an officer sued in an official capacity may not remove the action in order to obtain a federal forum for resolution of the underlying merits will in no way deprive the officer of access to a federal forum for determination of whether the suit is in fact an action against him or her personally. By the same token, if an officer is sued in both individual and official capacities, we see no bar to removal under section 1442(a)(1). See El Gran Video Club ___ ___________________ Corp. v. E.T.D., Inc., 757 F. Supp. 151, 155 & n.3 (D.P.R. 1991) _____ ____________ (observing that federal courts have removal jurisdiction over all pendent claims that are not "separate and independent"). 11 There, the Seventh Circuit, acting sua sponte, refused to allow a ___ ______ federal administrator sued in his official capacity to remove an action to federal court under section 1442(a)(1). Acknowledging that, in the aftermath of Primate Protection League, suits ___________________________ against federal agencies cannot be removed under section 1442(a)(1), see id. at 1278, Judge Posner wrote that "while the ___ ___ suit in this case is nominally against the Administrator, it is against him in his official capacity and such suits are considered to be against the government itself." Id. at 1279. ___ Thus, the court concluded that, absent an alternative basis for jurisdiction, dismissal for want of subject matter jurisdiction would be required. See id.6 ___ ___ We agree with the Seventh Circuit that Primate _______ Protection League, logically extended, mandates that a federal _________________ officer sued solely in his or her official capacity may not remove a suit to federal court under the aegis of 28 U.S.C. 1442(a)(1). In the case before us, this holding draws the sap from the tree: American's suit, brought against Belaga in her official capacity and seeking no relief against her personally, is in reality a suit against the agency. It necessarily follows that, because EPA itself could not have removed this action under section 1442, see Primate Protection League, 111 S. Ct. at 1708, ___ _________________________ Belaga's attempt to remove under the same statutory provision must fail. ____________________ 6In Derwinski the court retained jurisdiction because the _________ plaintiff's action arose under federal law. See Derwinski, 937 ___ _________ F.2d at 1280; see also 28 U.S.C. 1331, 1441 (1988). ___ ____ 12 III III Notwithstanding that this action was infelicitously removed under 28 U.S.C. 1442(a)(1) and that the parties steadfastly disclaim any independent basis for federal jurisdiction,7 we inquire whether any other toehold for federal court jurisdiction exists. Belaga's notice of removal did mention 28 U.S.C. 1441 a statute which permits removal of any suit that originally could have been brought in federal court.8 See, e.g., Merrell Dow Pharmaceuticals Inc. v. Thompson, 478 U.S. ___ ____ ________________________________ ________ 804, 808 (1986). Thus, principles of equity, as well as the law, compel us to explore whether American's declaratory judgment action falls within the federal district court's original jurisdiction. We proceed to run that gauntlet. A A ____________________ 7The parties' appellate filings ground removal jurisdiction solely in the officer removal statute. In answer to our express inquiry anent jurisdiction, Belaga replied that the United States, on her behalf, removed the action pursuant to 28 U.S.C. 1442(a)(1) and contended that such removal was proper. American averred that, apart from the officer removal statute, it was "not aware of any other basis for federal jurisdiction." Nyacol, by electing not to participate in this appeal, has effectively consented to the appropriateness of a state forum. 8The statute provides in pertinent part: Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. 28 U.S.C. 1441(a) (1988). 13 In this instance, the presence of original jurisdiction hinges upon the existence vel non of a federal question,9 that ___ ___ is, the existence of an action "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. 1331 (1988). Ordinarily, a claim arises under federal law within the meaning of section 1331 if a federal cause of action appears on the face of a well-pleaded complaint. See Gully v. First Nat'l ___ _____ ___________ Bank in Meridian, 299 U.S. 109, 113 (1936); Louisville & __________________ _____________ Nashville R.R. v. Mottley, 211 U.S. 149, 152 (1908). For _______________ _______ purposes of determining the existence of federal question jurisdiction in a declaratory judgment action, however, the Supreme Court directs our attention away from the face of the complaint and focuses it instead on the law that creates the underlying cause of action: Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction . . . . Public Service Comm'n v. Wycoff Co., 344 U.S. 237, 248 (1952); ______________________ ___________ see also Franchise Tax Bd. v. Construction Laborers Vacation ___ ____ ___________________ _______________________________ Trust, 463 U.S. 1, 15-16 & n.14 (1983). _____ Here, American's declaratory judgment action represents a mounted offensive on two related fronts: the suit is not only ____________________ 9The parties to the lawsuit are not of totally diverse citizenship and, apart from the possibility of a federal question, there is no other arguable foundation for federal jurisdiction. 14 an attempt to preempt impending actions by the insureds (seeking, presumably, to secure a defense against charges of environmental harm and to secure indemnification with respect to loss, costs, damages, and expense associated therewith), but it is also an attempt to foreclose governmental authorities from trying to reach insurance proceeds to satisfy as-yet-unrealized judgments under CERCLA. Thus, the underlying causes of action, howsoever visualized, are in the nature of claims to enforce an insurance contract, the adjudication of which will require interpretation of various policy provisions and contract terms. A suit is customarily deemed to arise under the law that gives birth to the cause of action. See American Well Works Co. v. Layne & Bowler ___ _______________________ ______________ Co., 241 U.S. 257, 260 (1916). Applying that approach, this case ___ is based solely upon, and, therefore, arises under, state law.10 See CPC Int'l, Inc. v. Northbrook Excess & Surplus Ins. ___ ________________ _________________________________ Co., 962 F.2d 77, 97-98 (1st Cir. 1992) (divining applicable ___ state law to interpret a pollution exclusion clause in an insurance policy); A. Johnson & Co. v. Aetna Cas. & Sur. Co., 933 ________________ _____________________ F.2d 66, 70-74 (1st Cir. 1991) (same); Ryan v. Royal Ins. Co., ____ _______________ ____________________ 10We note in passing that, were American to assert that CERCLA preempts state insurance actions, such an assertion, while mentioning federal law, would be insufficient to confer jurisdiction because federal law would come into play only as a defense. See Franchise Tax Bd., 463 U.S. at 13-14; Nashoba ___ __________________ _______ Communications, Inc. v. Town of Danvers, 893 F.2d 435, 440 (1st ____________________ ________________ Cir. 1990); see also Hudson Ins. Co. v. American Elec. Corp., 957 ___ ____ _______________ ____________________ F.2d 826, 830 n.4 (11th Cir.), cert. denied, 113 S. Ct. 411 _____ ______ (1992). We except, of course, the rare case, discussed infra p. _____ 15-16, where federal law so completely displaces state causes of action in a particular area that all such claims are "necessarily federal in character." Metropolitan Life Ins. Co. v. Taylor, 481 __________________________ ______ U.S. 58, 63-64 (1987). 15 916 F.2d 731, 734-35 (1st Cir. 1990) (similar); In re Acushnet ______________ River & New Bedford Harbor, 725 F. Supp. 1264, 1278-81 (D. Mass. ___________________________ 1989) (certifying various questions regarding the substantive interpretation of an insurance policy to the Massachusetts Supreme Judicial Court in order to determine an insurer's duty to cover cleanup costs), aff'd in part and rev'd in part on other _____ __ ____ ___ _____ __ ____ __ _____ grounds sub nom. Lumbermens Mut. Cas. Co. v. Belleville Indus., _______ ___ ____ _________________________ __________________ Inc., 938 F.2d 1423 (1st Cir. 1991), cert. denied, 112 S. Ct. 969 ____ _____ ______ (1992); see also Hudson Ins. Co. v. American Elec. Corp., 957 ___ ____ ________________ _____________________ F.2d 826, 828 (11th Cir.) (holding that an insured's potential suit to recover insurance proceeds for its liability under CERCLA arises under "the applicable state law governing the interpretation of insurance contracts"), cert. denied, 113 S. Ct. _____ ______ 411 (1992). Federal jurisdiction cannot take root in this arid soil.11 B B In an abundance of caution, we take one additional step. There may exist unusual circumstances wherein a state- created cause of action can be deemed to arise under federal law. For example, when a plaintiff's state-created right to relief ____________________ 11We note that CERCLA itself does not provide a direct cause of action against a responsible party's liability insurer. See ___ Port Allen Marine Servs., Inc. v. Chotin, 765 F. Supp. 887, 889 _______________________________ ______ (M.D. La. 1991) (dismissing claims brought directly against carrier because CERCLA "does not create a direct right of action against [PRP's] insurers"); cf. 42 U.S.C. 9608(c) (allowing ___ direct action against guarantors in limited circumstances). It is, therefore, abundantly clear that American's declaratory judgment complaint anticipates future coercive actions that not only will be entirely governed by state law, but also will be initiated only through state-created mechanisms. 16 "necessarily depends on resolution of a substantial question of federal law," Franchise Tax Bd., 463 U.S. at 28, or when a __________________ parallel "federal cause of action completely pre-empts a state cause of action," id. at 24, the suit is considered a creature of ___ federal law. We test these waters. The latter proposition (complete preemption) can be summarily dismissed. Structurally, CERCLA provides "no parallel federal cause of action for the recovery of insurance proceeds ___ ___ ________ __ _________ ________ for CERCLA-created liability." Hudson, 957 F.2d at 830. Rather, ___ ______________ _________ ______ its provisions, read objectively, choreograph a pas de deux ___ __ ____ wherein CERCLA-driven suits to collect insurance proceeds are to be brought under state law. See, e.g., 42 U.S.C. 9607(e)(1) ___ ____ (preserving "any agreement to insure, hold harmless, or indemnify a party" for CERCLA liability). We turn, then, to the former proposition (necessary dependence on a federal-law question). Conceivably, American might argue that a suit to compel it to defend and/or indemnify its insureds is one that, though created by state law, necessarily turns on federal common law. However, such an argument amounts to a call for the application of a uniform federal rule of decision to govern interpretation of an insurance policy's scope of coverage vis-a-vis CERCLA liability. We decline to heed that call in the face of solid precedent pointing in the opposite direction. The massed authority for treating insurance coverage questions in CERCLA cases as peculiarly matters of state law pervades the courts of appeals. See, e.g., Northbrook, 962 F.2d at 79; Northern Ins. ___ ____ __________ _____________ 17 Co. v. Aardvark Assocs., Inc., 942 F.2d 189, 192 (3d Cir. 1991); ___ ______________________ Liberty Mut. Ins. Co. v. Triangle Indus., Inc., 957 F.2d 1153, ______________________ _____________________ 1157 (4th Cir.), cert. denied, 113 S. Ct. 78 (1992); FL Aerospace _____ ______ ____________ v. Aetna Cas. & Sur. Co., 897 F.2d 214, 219 (6th Cir.), cert. ______________________ _____ denied, 111 S. Ct. 284 (1990); Aetna Cas. & Sur. Co. v. General ______ _____________________ _______ Dynamics Corp., 968 F.2d 707, 710 (8th Cir. 1992); Industrial _______________ __________ Indemnity Ins. Co. v. Crown Auto Dealerships, Inc., 935 F.2d 240, __________________ ____________________________ 241 (11th Cir. 1991). State courts chime in tune. See, e.g., ___ ____ Hazen Paper, 555 N.E.2d at 579; Boeing Co. v. Aetna Cas. & Sur. ___________ __________ _________________ Co., 784 P.2d 507, 509 (Wash. 1990); Technicon Elecs. Corp. v. ___ _______________________ American Home Assurance Co., 542 N.E.2d 1048, 1050-51 (N.Y. _____________________________ 1989). Case law aside, we doubt that Congress intended CERCLA to be the springboard for catapulting federal courts into what has historically been a state-law preserve. Congress has made it plain that federal legislation should rarely be interpreted to encroach on a state's regulation of insurance. See, e.g., ___ ____ McCarran-Ferguson Act, 15 U.S.C. 1012(b) (1988). Nothing in CERCLA suggests that Congress intended to deviate from this regimen. Indeed, CERCLA's text not only envisions the bringing of suits under state law but specifically mandates their resolution in accordance with that law. See 42 U.S.C. 9672(a) ___ (stating that CERCLA's insurance subchapter "shall [not] be construed to affect . . . the law governing the interpretation of insurance contracts of any State"). Thus, CERCLA effectively rebuts the claim that its drafters intended to transform state- 18 law insurance actions into actions arising under federal law. We think that the situation at hand is closely analogous to that which confronted us in Royal v. Leading Edge _____ ____________ Prods., Inc., 833 F.2d 1 (1st Cir. 1987). There, a plaintiff ____________ sought to recover for breach of a royalty agreement related to a copyrighted work. In an effort to maintain federal jurisdiction, he argued that his case arose under the federal copyright laws. See id. at 2. We disagreed, pointing out that when an action is ___ ___ brought to enforce a royalty contract the action arises out of the contract and not under the copyright statute, even though the contract concerns a copyright. See id. at 4. By the same token, ___ ___ an action brought to enforce the pollution-coverage provisions of an insurance policy arises out of the policy and not under federal environmental law, even though any potential recovery under the policy will satisfy a CERCLA-generated liability. Accord Hudson, 957 F.2d at 829-30. In this case, as in Royal, it ______ ______ _____ would be wrong to arrogate unto the federal courts "jurisdiction over what is essentially a garden-variety contract dispute." Royal, 833 F.2d at 5. _____ In fine, because the insurance dispute which American's declaratory judgment action anticipates is a creature of state law and cannot be said to arise under federal law, original federal question jurisdiction and, by extension, removal jurisdiction under 28 U.S.C. 1441(a) does not lie. IV IV Since neither section 1442 nor section 1441 supports 19 the removal of American's declaratory judgment action, there is simply no serviceable hook on which federal jurisdiction can be hung. We, therefore, go no further. Inasmuch as the lower court lacked subject matter jurisdiction, its order dismissing the action against EPA is null. See Insurance Corp. of Ir., 456 U.S. ___ ______________________ at 701 ("The validity of an order of a federal court depends upon that court's having jurisdiction over . . . the subject matter . . . ."). We vacate the dismissal order and direct that the district court reinstate Belaga, in her official capacity, as a party and thereafter return the improvidently removed action to the court from whence it emanated.12 Vacated and remanded with directions. No costs. Vacated and remanded with directions. No costs. _______________________________________________ ____________________ 12We take no view of Belaga's claims of sovereign immunity, non-justiciability, unripeness and the like. We are similarly noncommittal as to the effect, if any, of remand on the stipulation entered into between American and DEP. Because the federal courts lack jurisdiction, all such matters must be presented to, and resolved by, the state courts. 20